IN THE UNITED STATES COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| ERIC LAMONTE JOE,<br><br>Plaintiff,<br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, ROCKET COMPANIES, INC., ROCKET MORTGAGE, LLC, LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and FREEDOM MORTGAGE CORPORATION,<br><br>Defendants. | Case No. 26-1161 |

**VERIFIED COMPLAINT**

NOW COMES Eric Lamonte Joe ("Plaintiff") by and through counsel, making his Complaint against Defendants Freedom Mortgage Corporation ("Freedom") Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Mr. Cooper"), Rocket Companies, Inc. ("Rocket"), Lakeview Loan Servicing, LLC ("Lakeview"), and M&T Bank ("M&T") (collectively "Defendants") hereby stating the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff lives at 5366 Josephine Lane, SW, Concord, North Carolina.
2. Plaintiff is the owner of a home located at 3104 Pine Cone Trail, Greensboro, North Carolina (the "Home").
3. Plaintiff rents the Home to tenants to generate income.
4. Defendant Freedom is a mortgage lender headquartered in Boca Raton, Florida.

5. Plaintiff obtained a mortgage loan from Defendant Freedom on or about November 16, 2016 by executing a note (the "Note") and deed of trust recorded November 18, 2026 in the Guilford County Register of Deeds Book R7877, Page 1716-1737 (the "Deed of Trust") that purportedly secures the Note. Collectively the Note and Deed of Trust are referred to as the "Loan."
6. Defendant Lakeview is a mortgage servicer headquartered in Coral Gables, Florida.
7. Defendant Lakeview is the servicer and/or master servicer of the Loan.
8. Defendant Lakeview is the current servicer of the Loan.
9. Defendant M&T is a bank headquartered in Buffalo, New York.
10. Defendant M&T is the current sub-servicer of the Loan.
11. Defendant Mr. Cooper is a limited liability company headquartered in Coppell, Texas.
12. Defendant Nationstar acts across the United States as an owner and/or servicer of residential mortgage loans. Nationstar does business as Mr. Cooper.
13. Defendant Rocket is a company headquartered in Detroit, Michigan. Rocket acts across the United States as an owner and/or servicer of residential mortgage loans. Defendant Rocket Mortgage, LLC is an operating subsidiary of Rocket. Collectively they will be referred to herein as "Rocket."
14. On or around October 1, 2025, Rocket acquired Mr. Cooper. For purposes herein, Nationstar, Mr. Cooper, and Rocket will be referred to collectively herein as "Mr. Cooper."
15. Mr. Cooper was a sub-servicer of the Loan.
16. The word "Defendants" means Freedom, Lakeview, Mr. Cooper, and M&T.
17. Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1367 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), the Real Estate Settlement

Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA").

18. Jurisdiction is further conferred by 15 U.S.C. § 1681p.

19. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

20. This is an action for actual and punitive damages, including attorney's fees, filed by Plaintiff for failure of the Defendant to comply with applicable provisions of Titles 11 and 15 of the United States Code.

21. This action is further filed to preclude the frustration of the underlying purposes of the United States Bankruptcy Code.

22. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of the property that is the subject of the action is in this District.

## FACTS

### The Bankruptcy Case

23. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

24. Plaintiff purchased the Home in 1998 and used it as his primary residence until 2017 when he relocated for a job opportunity in Charlotte, North Carolina.

25. Since 2017, Plaintiff has maintained the Home as a rental property.

26. Due to financial issues not related to the Home, Plaintiff filed a proceeding under Chapter 13 of the Bankruptcy Code on April 8, 2020 in the Winston-Salem Division of the Middle District of North Carolina, Case Number 20-50339 (the "Bankruptcy Case").

27. While the national success rate for completing a Chapter 13 is around 40-50%, Plaintiff successfully completed a five (5) year plan and received a discharge on October 3, 2025 (the "Discharge").

28. On June 13, 2025, the Bankruptcy Judge entered an Order Deeming Mortgage Account Current (the "Mortgage Current Order"), which Ordered that the Loan was paid current through the April 2025 payment by the Chapter 13 Trustee ("Trustee"), that all defaults had been cured, and that the account was current and reinstated under the Note and Deed of Trust as if no default had ever occurred. A copy of the Mortgage Current Order is attached hereto and incorporated herein as "Exhibit 1."

29. The Mortgage Current Order further ordered Defendant Lakeview to credit payments received directly from Plaintiff to monthly payments due beginning May 2025.

30. The Mortgage Current Order additionally stated that Defendant Lakeview or any successors were prohibited from the assessment of any defaults or charges arising prior to May 2025.

31. On May 5, 2025, Defendant Lakeview filed a Response to Notice of Final Cure Payment (the "Notice of Cure"), stated that the Plaintiff was "current with all post-petition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow and costs."

32. The Notice of Cure further stated that the next payment the Plaintiff owed was due on June 1, 2025.

**Plaintiff's Mortgage Payments After Bankruptcy**

33. Plaintiff tendered his mortgage payments to Defendants through an automated phone system. According to Mr. Cooper's record on Plaintiff's account, Plaintiff made the following payments in the following amounts:

| DATE | AMOUNT |
|---|---|
| 05/01/25 | $717.36 |
| 06/02/25 | $721.00 |
| 07/07/25 | $721.00 |
| 08/04/25 | $721.00 |
| 09/02/25 | $721.00 |
| 10/03/25 | $720.00 |

34. Mr. Cooper sent Plaintiff a letter dated October 14, 2025 alleging that the Loan was in default for failure to make payments required and that the amount needed to cure default was $4,273.06 consisting of monthly payments due in the amount of $4,304.16.

35. When Plaintiff called to pay his November 2025 payment on or around November 1, 2025, he was told by an employee of Mr. Cooper that the payment amount needed to cure default was $6,963.32.

36. Plaintiff viewed his payment page on Mr. Cooper's website that same day, which displayed the following:

| **Description** | **Amount** |
|---|---|
| Past Due Principal and Interest | $3,304.24 |
| Escrowed Taxes and Insurance | $2,434.64 |
| Corporate Advance Total | $100.00 |
| Accrued Late Charges | $33.04 |
| Anticipated Fees | $1,122.50 |
| Less Unapplied Funds | ($31.10) |
| **Total Reinstatement Amount** | **$6,963.32** |

37. On October 14, 2025, Mr. Cooper issued a Notice of Default and Intent to Accelerate the Loan to Plaintiff alleging payment of $4,273.06 was required by November 28, 2025 to cure the default.

38. The November 18, 2025 letter also alleged that Plaintiff had payments of $717.36 due for June, July, August, September, October and November of 2025 and that the amount of $5,740.82 was needed to bring the loan current.

39. Mr. Cooper initiated foreclosure proceedings on December 1, 2025 (the "Foreclosure").

40. On December 15, 2025, Brock & Scott, PLLC ("Attorney"), attorney for Defendant Lakeview, sent Plaintiff a letter seeking payment of $5,740.82 to bring the Loan current. The payoff on the Loan was allegedly $70,607.39.

41. On January 22, 2026, Plaintiff's attorney sent Attorney a letter disputing the debt, noting that the amount of the debt was wrong, and providing copies of the Notices of Error sent to Mr. Cooper outlining the disputes and issues with its servicing of the Loan.

42. In an effort to stop the Foreclosure, prevent further damage to his credit report and score, the addition default fees continuously being added to the Loan, and to protect his future VA Housing Entitlement eligibility, Plaintiff paid Defendants $8,869.75 on January 22, 2026.

43. On May 19, 2026, Defendant M&T sent Plaintiff a letter stating that effective June 2, 2026, Defendant Lakeview would transfer the servicing of the Loan from Mr. Cooper to M&T. A copy of that letter is attached hereto and incorporated herein as "Exhibit 2."

44. A Mortgage Statement provided by Defendant Lakeview dated July 30, 2026 alleged an incorrect outstanding principal balance of $61,839.15 and incorrect escrow balance of $3,159.59. A copy of that Mortgage Statement is attached hereto and incorporated herein as "Exhibit 3."

45. The Loan is a VA-guaranteed loan with a portion guaranteed by the U.S. Department of Veterans Affairs ("VA").

46. Plaintiff is employed as a Vice President, Portfolio Manager Senior, at a bank, and a prerequisite for jobs in his field is passing a personal credit check with a satisfactory credit score and maintaining a satisfactory credit score.

**Loan History**

47. The Loan originated on or about November 16, 2016 with Defendant Freedom as the lender. The Loan refinanced the Plaintiff's prior mortgage loan on the Property.

48. Upon information and belief, Defendant Freedom and Defendant Lakeview serviced the Loan until Lakeview transferred it to Defendant Mr. Cooper as sub-servicer for Defendant Lakeview as of January 4, 2022.

49. Defendant Mr. Cooper serviced the Loan from January 4, 2020 until June 2, 2026.

50. Defendant Lakeview continues to service the Loan.

51. Defendant Lakeview transferred sub-servicing of the Loan from Mr. Cooper to M&T Bank on June 2, 2026.

**Plaintiff's Notices of Error and Requests for Information**

52. On or about November 6, 2025, Plaintiff, through counsel, sent two correspondences captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, payoff, and fees assessed, among other items (collectively the "RFIs") to Mr. Cooper at the address designated by Mr. Cooper for the receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c), respectively the ("Mr. Cooper Designated Address"). A copy of the RFIs is attached hereto and incorporated herein as "Exhibit 4."

53. On or about November 6, 2025, Plaintiff, through counsel, sent correspondence captioned "Request for Itemized Payoff Statement Pursuant to Section 1026.36 of Regulation Z" seeking a payoff amount on the Loan (the "Payoff Request"). A copy of the Payoff Request is attached hereto and incorporated herein as "Exhibit 5."

54. On or about November 13, 2025, Mr. Cooper sent correspondence in response to the RFIs and Payoff Request (the "Response"). A copy of the Response is attached hereto and incorporated herein as "Exhibit 6."

55. On or about November 25, 2025, Plaintiff, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Mr. Cooper (the "Payment Refusal NOE") at the Mr. Cooper Designated Address. A copy of the Payment Refusal NOE is attached hereto and incorporated herein as "Exhibit 7."

56. Through the Payment Refusal NOE, Plaintiff alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by failing to accept payments from Plaintiff on or around November 1, 2025 and alleging the Loan was in default at that time. *See*, Exhibit 7.

57. On or about November 25, 2025, Plaintiff, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Mr. Cooper (the "Payoff NOE") at the Mr. Cooper Designated Address. A copy of the Payoff NOE is attached hereto and incorporated herein as "Exhibit 8."

58. Through the Payoff NOE, Plaintiff alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by failing to provide an accurate payoff on the Loan in the Response. *See*, Exhibit 8.

59. On or about November 25, 2025, Plaintiff, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Mr. Cooper (the "Payment Reversal NOE") Mr. Cooper Designated

Address. A copy of the Payment Reversal NOE is attached hereto and incorporated herein as "Exhibit 9."

60. Through the Payment Reversal NOE, Plaintiff alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by reversing numerous payments on the Loan for the October 2023 payment through July 31, 2025 payment. *See*, Exhibit 9.

61. Through the Payment Reversal NOE, Plaintiff further alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by causing payments to be misapplied and miscredited by not being applied during the month in which they were paid. *See*, Exhibit 9.

62. On or about November 25, 2025, Plaintiff, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Mr. Cooper (the "Fees NOE") at the Mr. Cooper Designated Address. A copy of the Fees NOE is attached hereto and incorporated herein as "Exhibit 10."

63. Through the Fees NOE, Plaintiff alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by assessing a late charge on October 16, 2025 and assessing three lender-paid expense disbursements. *See*, Exhibit 10.

64. On or about January 15, 2026, Plaintiff, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 to Mr. Cooper (the "Tax NOE") at the Mr. Cooper Designated Address. A copy of the Tax NOE is attached hereto and incorporated herein as "Exhibit 11."

65. Through the Tax NOE, Plaintiff alleged that Mr. Cooper committed errors in relation to the servicing of the Loan by issuing an incorrect IRS Form 1098 for tax year 2025 that stated an incorrect, deflated amount of interest Plaintiff paid on the Loan in 2025. *See*, Exhibit 11.

66. On or about February 12, 2026,[1] Mr. Cooper sent correspondence in response to the Payoff NOE, Payment Refusal NOE, Payment Reversal NOE, Fees NOE and Tax NOE (collectively the "NOEs") and alleged that Mr. Cooper had "thoroughly reviewed and responded" to each inquiry and found no evidence of violations with regard to its servicing of the Loan (the "NOE Response"). A copy of the NOE Response is attached hereto and incorporated herein as "Exhibit 12." The loan transaction history was included in the NOE Response and will be referred to as the "Loan Transaction History."

67. It is clear from the face of the NOE Response that Mr. Cooper did not conduct a reasonable investigation into the errors alleged through the NOEs because there was no mention of Mr. Cooper's own filings in the bankruptcy case deeming the Loan current through May 2025, any other documents filed by Mr. Cooper in the Bankruptcy Case, or the fees assessed to the Loan. It further alleged that Plaintiff only paid $967.62 in interest in 2025 despite proof of payments showing otherwise.

**Impact Upon Damages Suffered by Plaintiff**

68. Defendants' mishandling of the Loan post-bankruptcy has caused Plaintiff to incur attorneys' fees and costs in unsuccessful attempts to correct such errors relating to the Loan.

69. Defendants' improper actions caused Plaintiff to suffer from actual and proximate damages including but not limited to:

   a. Improper fees and charges imposed on the Loan due to erroneous alleged delinquency on the Loan, the collection of such fees, including any late fees and other default servicing

[1] Mr. Cooper claimed to have sent responses prior to said date but acknowledged sending them to an incorrect address for Plaintiff's counsel and no responses to NOEs were received by Plaintiff until February 2026.

fees for which Plaintiff is personally obligated or which otherwise negatively impacts any equity in the Home to which he is entitled;

b. Legal fees, costs, and expenses to prepare and submit requests for information and notices of error to Mr. Cooper in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to otherwise have Mr. Cooper mitigate the harm caused to Plaintiff to which he did not receive proper or adequate responses;
c. The potential lost opportunity of Plaintiff to obtain VA financing in the future;
d. Harm to Plaintiff's credit and a delay in the rehabilitation of Plaintiff's credit due to the unnecessarily extended and persisting default on the Loan which could have been resolved by Defendants;
e. The loss of funds and the loss of use of funds remitted to Defendants to reinstate the Loan and stop the Foreclosure;
f. Severe emotional distress driven by Defendants' failure to properly handle the Loan and by the justified fear that such blatant indifference would result in the foreclosure sale of the Home, which has resulted in frustration, loss of sleep, anxiety, depression, fear of impact on Plaintiff's job and future job opportunities, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF MR. COOPER'S VIOLATIONS OF RESPA AND REGULATION X**

70. Mr. Cooper's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

71. Mr. Cooper has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

72. Plaintiff reviewed the CFPB's consumer complaint database and identified narratives asserting Defendants engaged in similar conduct against other borrowers. In particular, Plaintiff reviewed several of the 7,650 complaints against Mr. Cooper regarding mortgage servicing and may produce and identify the same as part of the discovery process. The same are too voluminous to attach to this Complaint. 207 complaints specifically reference "RESPA." The complaints show conduct that demonstrates that Mr. Cooper has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE: AGAINST LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and MR. COOPER VIOLATIONS OF 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)**

73. Plaintiff restates and incorporates all the statements and allegations contained in the above paragraphs in their entirety, as if fully rewritten herein.

74. Defendant Lakeview is a mortgage servicer under RESPA.

75. Defendant M&T is a mortgage servicer under RESPA.

76. Defendant Mr. Cooper is a mortgage servicer under RESPA.

77. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

78. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

79. A servicer must reply to a notice of error by either:

a. Correcting the error or errors identified by borrower and providing borrower with certain information about the correction; or

b. Conducting a reasonable investigation and providing the borrower with a written notification that includes the servicer has determined no error occurred, the reason for this determination, and additional information. *See* 12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

80. "A servicer of a federally related mortgage shall not. . .fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

81. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

82. The NOEs each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 7-11.

83. Mr. Cooper received the NOEs and did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through its Responses as it did not admit that the errors occurred as alleged in the NOEs nor take any corrective action. *See*, Exhibit 12.

84. Mr. Cooper failed to adequately address and or correct the following servicing errors

| NOE | Response | Violation(s) | No. of Errors |
|---|---|---|---|
| Payment Reversal | Admitted reversing payments, ignored mention of the Mortgage Current Order or how payments were tendered by Ch. 13 Trustee; | Failed to correct misapplication of payments or compliance with Mortgage Current Order. | 46 |
| Fees | Referred only to "corporate advances" and alleged they were valid and must be paid. Failed to reference or comply with the Mortgage Current Order. | Failed to correct payment misapplication and improperly assessed fees. | 4 |
| Payments | Failed to reference or comply with the Mortgage Current Order or misapplication of payments tendered by Ch. 13 Trustee. Failed to correct default status or application of payments. Failed to halt foreclosure proceeding. | Failed to correct misapplication of payments by Ch. 13 Trustee and Debtor. | 46 |
| Payoff | Failed to address error that payoff figure only decreased by $4,548.04 over a 45-month period while payments were current. | Failed to correct payoff figure or address error allegation specifically. | 1 |
| Tax Form | Denied Form 1098 was inaccurate. | Failed to correct Form 1098 despite proof of payments received in 2025. | 1 |

85. Mr. Cooper did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through its Responses as it is clear that Mr. Cooper did not perform a reasonable investigation into the errors alleged in the NOEs as Mr. Cooper never referenced the Mortgage Current Order or how its misapplication of payments post-petition violated the same. *See*, Exhibits 7-12.

86. Mr. Cooper failed to respond to the NOEs with timely action by its own admission by sending responses to an incorrect address.

87. When servicing of a federally related mortgage loan is transferred, the transferor must "notify the borrower in writing . . . not less than 15 days before the effective date of transfer." 12 U.S.C. § 2605.

88. Defendants Lakeview and M&T sent Plaintiff a notice of the transfer on May 19, 2026. *See*, Exhibit 2.

89. The notice stated that the effective date of the transfer was June 2, 2026. *See*, Exhibit 2.

90. May 19 is only 13 days prior to June 2, 2026.

91. Lakeview and M&T did not fulfill their obligations under 12 U.S.C. § 2605 as they did not notify Plaintiff 15 days before the effective date of transfer.

**Impact and Damages**

92. Mr. Cooper's failures to timely and properly respond to the NOEs and failure to properly investigate and respond thereto by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOEs constitute at least 98 violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Plaintiff to suffer actual damages, as discussed *supra*. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.")

93. Further, Mr. Cooper, Lakeview, and M&T's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Plaintiff to incur attorney's fees and costs associated with the preparation of the NOEs. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp.

3d 712, 726-728 (S.D. Ohio 2014); *Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Robinson v. Nationstar Mortg. LLC*, No. CV TDC-14-3667, 2019 WL 4261696, at *8 (D. Md. Sep. 9, 2019) (holding that "actual damages may include . . . out-of-pocket expenses incurred in dealing with a RESPA violation, such as expenses for preparing and copying correspondence," and that costs "incurred in response to the RESPA violation" constitute actual damages within the meaning of 12 U.S.C. § 2605(f)); *Sharma v. Rushmore Loan Mgmt. Servs., LLC*, 611 F. Supp. 3d 63, 84 (D. Md. 2020) (adopting Robinson's rule and permitting borrower's claim for administrative costs incurred to transmit information related to QWRs and loss mitigation applications that the servicer "largely disregarded" to survive dismissal); *Lindsay v. Rushmore Loan Mgmt. Servs., LLC*, No. PWG-15-1031, 2017 WL 1230822, at *10 (D. Md. Apr. 4, 2017) ("RESPA plaintiffs may recover actual damages for the costs of their efforts to obtain responses to QWR's after defendants have failed to respond.").

94. M&T, Lakeview, and Mr. Cooper's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of their obligations under RESPA and Regulation X.

95. As a result of M&T, Lakeview, and Mr. Cooper's actions, each is jointly and severally liable to Plaintiff for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

96. Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: AGAINST LAKEVIEW and MR. COOPER FOR VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, et. Seq.

97. Plaintiff restates and incorporates all the statements and allegations contained in the above paragraphs in their entirety, as if fully rewritten herein.

98. Plaintiff is a "consumer" as he is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

99. The Loan is a "debt" as it is an obligation or alleged obligation of Plaintiff to pay money arising out of a transaction primarily for personal, family, or household purposes – the financing of the Home. 15 U.S.C. § 1692a(5).

100. Lakeview and Mr. Cooper are each a "debt collector" because they regularly collect or attempt to collect on the Loan and other loans owed to creditors, such as the owner or the investor of the Loan. 15 U.S.C. § 1692a(6).

101. The Loan was in contractual default at the time Lakeview and Mr. Cooper acquired the servicing rights to the same. *See* 15 U.S.C. § 1692a(6)(F)(iii).

102. The Loan was not in default upon entry of the Mortgage Current Order.

103. The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of false representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

104. Mr. Cooper erroneously notified the VA that Plaintiff was in default under the Loan in or around November 2025. A copy of an email from the VA to Plaintiff is attached hereto and incorporated herein as "Exhibit 14."

105. Future VA Entitlement for the Plaintiff was jeopardized by this false report, and the email advised Plaintiff to call the VA to discuss future usage of his VA entitlement.

106. Lakeview and Mr. Cooper each violated 15 U.S.C. § 1692e and 1692e(1), by reversing payments in violation of the Mortgage Current Order and failing to correct the same when informed of its errors by Plaintiff and by initiating a foreclosure action against the Home.

107. The FDCPA prohibits the use of unfair and unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

108. Lakeview and Mr. Cooper each violated 15 U.S.C. § 1692f through their actions by reversing payments in violation of the Mortgage Current Order and failing to correct the same when informed of its errors by Plaintiff and by initiating a foreclosure action against the Home.

109. Lakeview and Mr. Cooper's actions have caused Plaintiff to suffer actual damages, further described, supra, including but not limited to requiring Plaintiff to incur attorneys' fees and costs related to the preparation and mailing of the NOEs to attempt to correct the erroneous conduct of the same.

110. As a result of Lakeview and Mr. Cooper's conduct, Plaintiff suffered extreme emotional distress driven by the fear that their actions would lead to an unwarranted foreclosure of his Home, as it did, despite his successful completion of his bankruptcy proceeding, the Mortgage Current Order, and his timely post-petition mortgage payments, which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

111. As a result of Lakeview and Mr. Cooper's actions, each is liable to Plaintiff for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

112. Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

**COUNT THREE: AGAINST FREEDOM, LAKEVIEW AND MR. COOPER VIOLATION OF 11 U.S.C. § 524(a)(2), 524(i), 11 U.S.C. § 105, and CONTEMPT**

113. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

114. The Discharge operated as an injunction against any act to collect, recover, or offset any debt as a personal liability of the Debtor. *See* 11 U.S.C. § 524(a)(2).

115. Willful failure of a creditor to credit payments received under a confirmed plan shall constitute a violation of an injunction under subsection (a)(2) if such failure caused material injury to the debtor. *See* 11 U.S.C. § 524(i).

116. Freedom, Lakeview and Mr. Cooper had actual knowledge of Plaintiff's bankruptcy proceedings and Discharge.

117. Freedom, Lakeview, and Mr. Cooper continued to attempt to collect from Plaintiff a debt that was discharged in his bankruptcy case.

118. Freedom, Lakeview, and Mr. Cooper continued to attempt to collect from Plaintiff a debt that was discharged in his bankruptcy case after being informed by Plaintiff's counsel that it had violated Section 524 in a prior attempt to collect the same debt.

119. When Freedom, Lakeview, and Mr. Cooper reversed payments made in bankruptcy-related funds on Plaintiff's account post-bankruptcy, it violated Section 524(i). See, Exhibits 9, 12.

120. When Freedom, Lakeview, and Mr. Cooper assessed and attempted to collect fees on Plaintiff's account that allegedly would have been incurred during the Bankruptcy Case, it violated Section 524(a)(2).

121. Any fees owed to Freedom, Lakeview, and Mr. Cooper were discharged in Plaintiff's Bankruptcy.

122. Plaintiff incurred attorney fees to his undersigned counsel as a result of Freedom, Lakeview, and Mr. Cooper's violations.

123. Plaintiff lost time and productivity at his job consulting with undersigned counsel.

124. Plaintiff experienced anxiety, stress and fear that his property may be foreclosed and that he would have to pay a substantial sum of money to resolve the mistakes Defendants made on the Loan.

125. Plaintiff experienced anxiety that inaccurate information Defendants published on his credit report may harm his search for employment, position with his current employer, or future ability to obtain loans from the VA.

126. Pursuant to Section 105(a), the Bankruptcy Court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

127. The Discharge is an order of the Bankruptcy Court, and its violation is punishable by civil sanctions.

128. The Mortgage Current Order is an order of the Bankruptcy Court, and its violation is punishable by civil sanctions.

129. Section 105 of the Bankruptcy Code allows a court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction of Section 524. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *see also Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 154 (4th Cir. 2014).

130. Violation of any order of the Bankruptcy Court may result in a court holding the creditor in civil contempt.

131. Sanctions may include actual damages, attorney fees, and punitive damages. *See id.*

132. Emotional distress due to a creditor's actions and conduct can constitute actual damages.

133. Plaintiff is entitled to actual damages, including for significant emotional distress and reasonable and necessary attorney fees incurred from Freedom, Lakeview, and Mr. Cooper's violation of his bankruptcy rights.

**COUNT FOUR: AGAINST MR. COOPER**
**VIOLATION OF 15 U.S.C. § 1681s-2(b)**

134. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

135. Furnishers of information under the FCRA receive notice from the consumer reporting agency when a consumer has initiated a dispute and reinvestigation of information in a consumer's file. 15 U.S.C. § 1681i(a)(2).

136. Once a furnisher receives notice of a dispute under 15 U.S.C. § 1681i(a)(2), it must conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b).

137. Under 15 U.S.C. § 1681s-2(b)(1), a furnisher must "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to 15 U.S.C. § 1681i(a)(2); (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly: (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."

138. “[C]onsumers can . . . bring private suits for violations of § 1681s-2(b).” *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008).

139. “[A] private right of action exists under Section 1681s-2(b) if furnishing organizations fail to investigate disputed credit information after two events have occurred: (1) a consumer has filed a dispute with the consumer reporting agency; and (2) the consumer reporting agency notified the creditor or the creditor’s agent about the dispute.” *McLaughlin v. Nationstar Mortg. LLC*, No. 1:18-CV-593, 2018 U.S. Dist. LEXIS 155039, at *11 (M.D.N.C. Sept. 12, 2018).

140. “Section 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.” *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004).

141. A copy of Plaintiff’s credit report from Experian dated December 24, 2025 (“Credit Report”) is attached hereto and incorporated herein as “Exhibit 15.”

142. Mr. Cooper reported to Experian that as of October 1, 2025, the Loan was delinquent by 180 days and 180 days past due.

143. Upon information and belief, Plaintiff’s credit score decreased because of Mr. Cooper’s reporting the account delinquent.

144. Mr. Cooper also reported that the past due amount on the Loan as of October 2025 was $0.00, in contradiction to it being 180 days delinquent.

145. Plaintiff received a copy of the Credit Report as part of a background check performed for his employment.

146. Plaintiff was embarrassed and feared negative consequences at his job due to the erroneous information reported by Mr. Cooper on his Credit Report.

147. Plaintiff disputed the delinquency report through Experian's dispute center.

148. Mr. Cooper failed to perform a reasonable investigation of the dispute.

149. Mr. Cooper failed to correct the delinquency report after Plaintiff disputed the same.

150. Experian issued a Report, Report Number 3174-8475-72, to Plaintiff at the conclusion of the dispute stating that "the information you disputed as been verified as accurate. . . " A copy a message sent to Plaintiff by Experian is attached hereto and incorporated by reference herein as "Exhibit 16."

151. Plaintiff disputed the findings of the Report, and Experian did a reinvestigation of the dispute, which resulted in no change to the incorrect reporting. A copy of the Report is attached hereto and incorporated herein as "Exhibit 17."

152. Defendant Mr. Cooper's willful or reckless failure to correct the inaccurate report directly and proximately caused Plaintiff to receive an inaccurate credit report as part of a background check for his employment.

153. Defendant Mr. Cooper's willful or reckless failure to correct the inaccurate report directly and proximately caused Plaintiff to incur attorney's fees with respect to his credit report.

154. Plaintiff suffered actual damages from the Defendant Mr. Cooper's violations of 15 U.S.C. § 1681s-2(b) including but not limited to emotional distress and attorney's fees.

155. Alternatively, 15 U.S.C. § 1681n(a)(1)(A) permits statutory damages of "not less than $100 and not more than $1,000" for a defendant's willful or reckless failure to comply with FCRA requirements.

156. As a result of Defendant Mr. Cooper's actions, it is liable to Plaintiff for costs, attorney's fees, and either: actual or statutory damages under 15 U.S.C. § 1681n(a).

157. As a result of Defendant Mr. Cooper's actions, it is liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n(a)(2).

158. In the alternative, Defendant Mr. Cooper was negligent in its violations of 15 U.S.C. § 1681s-2(b) and is liable to Plaintiff for actual damages, costs, and attorney's fees under 15 U.S.C. § 1681o(a).

## COUNT FIVE: LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and MR. COOPER VIOLATIONS OF N.C. GEN. STAT. 75-54

159. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

160. Under North Carolina law, plaintiffs must meet only three requirements to plead a claim for unfair debt collection practices: (1) the plaintiff must be a "consumer" within the meaning of the NCDCA; (2) the obligation or alleged obligation incurred must be a "debt" within the meaning of the NCDCA; and (3) the defendant must be a "debt collector" within the meaning of the NCDCA. *See, Davis Lake Comty. Ass'n v. Feldmann*, 530 S.E.2d 865, 868 (N.C. Ct. App. 2000).

161. Under the NCDCA, a "'consumer' [is] any natural person who has incurred a debt or alleged debt for personal, family, [or] household . . . purposes." N.C. GEN. STAT. § 75-50(1).

162. As the Plaintiff incurred the home loan for personal, family, or household purposes, he is a "consumer" within the meaning of the NCDCA.

163. Under the NCDCA, a "debt" is "any obligation . . . alleged to be owed or due from a consumer." N.C. GEN. STAT. § 75-50(2).

164. The Loan is a "debt" under the NCDCA.

165. Under the NCDCA, a "debt collector" is "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. GEN. STAT. § 75-50(3).

166. Defendant Mr. Cooper collected payments and other amounts on the Loan from Plaintiff.

167. Defendant Mr. Cooper is a "debt collector" within the meaning of the NCDCA.

168. Defendant Lakeview collected payments and other amounts on the Loan from Plaintiff.

169. Defendant Lakeview is a "debt collector" within the meaning of the NCDCA.

170. Defendant M&T currently collects payments due under the Loan from Plaintiff.

171. Defendant M&T is a "debt collector" within the meaning of the NCDCA.

172. Acts must be unfair, in or affecting commerce, and must have proximately caused the Plaintiff's injury to violate the statutes. N.C. GEN. STAT. § 75-1.1; *Reid v. Ayers*, 531 S.E.2d 231, 235 (N.C. Ct. App. 2000) (applying the § 75-1.1 requirements to violations of 75-50).

173. An act is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers" or unlawful. *Johnson v. Phoenix Mut. Ins. Co.*, 266 S.E.2d 610, 620, 621 n. 6 (N.C. 1980); *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981) ("[a] practice is unfair when it offends established public policy"); *Onnipauper LLC v. Dunston*, 892 S.E.2d 487, 493 (N.C. Ct. App. 2023) (stating an unlawful provision violates public policy and is therefore unfair under the NCDCA).

174. Misleading the Plaintiff to believe his loan was in default multiple times, failing to correct the mistake after numerous notices of error, misleading the Plaintiff to believe communications were not for the purposes of collecting a debt, and instituting a foreclosure proceeding against the Plaintiff based on the erroneous alleged default are unethical and violations of § 75-54.

175. Misleading the Plaintiff to believe his loan was in default multiple times, failing to correct the mistake after numerous notices of error, misleading the Plaintiff to believe communications were not for the purposes of collecting a debt, and instituting a foreclosure proceeding against the Plaintiff based on the erroneous alleged default are therefore, unfair practices.

176. Notifying the VA that the Loan was in default when it was not falsely represented the character and extent of the debt.

177. Upon information and belief, Mr. Cooper failed to report a "Default Cured Loan Reinstated" event in the VA reporting system after it reported the Loan in default to the VA.

178. The relationship between a borrower and a mortgage broker is an activity that affects commerce. N.C. GEN. STAT. § 75-1.1 ("'commerce' includes all business activities"); *Johnson v. Phoenix Mut. Ins. Co.*, 266 S.E.2d 610, 620, 620 (N.C. 1980) ("[t]he broker is manifestly engaged in the business of selling his services in procuring a loan").

179. Under the NCDCA, "[n]o debt collector shall collect or attempt to collect or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." N.C. GEN. STAT. § 75-54.

180. Acts do not need to be deliberate acts of deceit or bad faith but must possess the "tendency or capacity to mislead, or created [a] likelihood of deception." *Marshall v. Miller*, 302 N.C. 539, 548 (N.C. 1981).

181. Providing Plaintiff with an incorrect payoff amount and escrow balance is a fraudulent, deceptive, or misleading representation.

182. Falsely claiming that a loan is delinquent when it is not is a fraudulent, deceptive, or misleading representation.

183. Falsely informing its Attorney that a loan is delinquent and ripe for foreclosure proceedings is a fraudulent, deceptive, or misleading representation.

184. Defendant Mr. Cooper told Plaintiff the incorrect loan payment amount or status in a fraudulent, deceptive, or misleading manner in at least 6 distinct instances.

185. Defendant Mr. Cooper misrepresented the nature of the Loan as being in default and requiring $4,273.06 to cure the same in the October 14, 2025 letter. A copy of the October 14, 2025 letter is attached hereto and incorporated herein as "Exhibit 18."

186. Defendant Mr. Cooper misrepresented the nature of the Loan as being in default and incorrectly stated that the amount needed to cure said default was $6,963.32 via telephone to the Plaintiff on November 1, 2025.

187. Defendant Lakeview misrepresented the nature of the Loan as being in default and incorrectly represented that the amount needed to cure said default was $6,963.32 on its payment portal on November 1, 2025. A copy of the November 1, 2025 payment portal screen is attached hereto and incorporated herein as "Exhibit 19."

188. Defendant Mr. Cooper misrepresented the nature of the Loan as being in default and incorrectly stated that the amount needed to cure said default was $5,740.82 in the November 18, 2025 letter.

189. Defendant Lakeview, through its attorney, misrepresented that the Loan was in default, that the total amount of the debt was $70,607.39, and the amount needed to cure said default. A copy of the attorney letter is attached hereto and incorporated herein as "Exhibit 21."

190. Mr. Cooper incorrectly stated that the Loan was in default in their NOE Response. *See* Exhibit 12.

191. Under the NCDCA, "[f]ailing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt" is a fraudulent, deceptive, or misleading representation. N.C. Gen. Stat. § 75-54(2).

192. Mr. Cooper falsely claimed in their November 18, 2025 letter that the letter "is not an attempt to collect a debt yet initiated foreclosure proceedings days later." *See* Exhibit 20.

193. Under the NCDCA, "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding" is a fraudulent, deceptive, or misleading representation. N.C. Gen. Stat. § 75-54(4).

194. Mr. Cooper provided false information to its attorney and instructed them to initiate foreclosure proceedings on December 1, 2025.

195. Plaintiff suffered actual damages including but not limited to the collection of improper fees and charges imposed on the Loan due to an erroneously alleged delinquency, harm to Plaintiff's credit, causing his job to be in possible jeopardy, the loss of funds remitted to Defendants to reinstate the Loan and stop the foreclosure, emotional distress, and attorney's fees as a direct and proximate cause of Lakeview's and Mr. Cooper's fraudulent, deceptive, or misleading representations.

196. Under the NCDCA, "any debt collector who fails to comply with any provision of [the NCDCA] . . . is liable to such person in a private action in an amount equal to the sum of (i) any actual damage as a result of such failure; and (ii) civil penalties the court may allow" in an amount not less than $500.00 and not greater than $4,000.00. N.C. GEN. STAT. § 75-56(b).

197. As a result of Lakeview and Mr. Cooper's actions, Defendants Lakeview, M&T, and Mr. Cooper are liable to Plaintiff for actual damages, statutory damages, costs, and attorney's fees under N.C. GEN. STAT. § 75-56(b).

198. As a result of Lakeview and Mr. Cooper's actions, Defendants Lakeview, M&T, and Mr. Cooper are liable to Plaintiff for punitive damages under N.C. GEN. STAT. § 75-56.

**COUNT SIX: AGAINST LAKEVIEW LOAN SERVICING, LLC, M&T BANK, and MR. COOPER VIOLATIONS OF N.C. GEN. STAT. 75-55**

199. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

200. Under the NCDCA, "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means." N.C. GEN. STAT. § 75-55.

201. Unconscionable means include, but are not limited to, "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. GEN. STAT. § 75-55(2).

202. The collection of an unlawful fee is an unfair act.

203. The Mortgage Current Order prohibited Freedom, Lakeview and Mr. Cooper from the assessment of any defaults or charges arising prior to May 2025. *See* Exhibit 1.

204. Under paragraph 6(A) of the Note, the note holder may assess a late charge if payment is not received from Plaintiff within 15 calendar days of the due date.

205. Under paragraph 6(E) of the Note, the Note Holder may require Plaintiff to pay any costs and expenses incurred by Note Holder, including reasonable attorney's fees, in enforcing the Note if Plaintiff were in default and Note Holder accelerated the debt.

206. "Default" is defined under paragraph 6(B) as being when borrower does not pay the full amount of each monthly payment on the date it is due.

207. The Deed of Trust allows the Lender to charge and collect certain costs and fees when a borrower is in default.

208. Plaintiff was never in default after the Mortgage Current Order was entered.

209. The NOE Response showed the following fees assessed by Mr. Cooper in late 2025 – early 2026: $100.00 Corporate Advance, $33.04 Accrued Late Charges, $1,122.50 Anticipated Fees."

210. The Loan Transaction History shows the following fees assessed to the Loan by Mr. Cooper:

| | |
|---|---|
| 02/03/26 | $2,256.57 in Lender Paid Expenses |
| 01/22/26 | $75.00 in Lender Paid Expenses |
| 01/22/26 | $33.04 in Late Fees |
| 01/05/26 | $25.00 in Lender Paid Expenses |
| 12/01/25 | $25.00 in Lender Paid Expenses |
| 11/17/25 | $16.52 in Late Charges |
| 11/11/25 | $75.00 in Lender Paid Expenses |
| 10/29/25 | $25.00 in Lender Paid Expenses |
| 10/16/25 | $16.52 in Late Charges |
| 10/03/25 | $25.00 in Lender Paid Expenses |
| 09/12/25 | $25.00 in Lender Paid Expenses |

211. The Plaintiff was never in default after entry of the Mortgage Current Order, and Mr. Cooper assessed and collected fees it was not legally entitled to.

212. The Mortgage Current Order further ordered Defendant Lakeview to credit payments received directly from Plaintiff to monthly payments due beginning May 2025. *See* Exhibit 1.

213. Plaintiff tendered mortgage payments to Defendants through an automated phone system monthly from May to October, 2025.

214. Defendant Lakeview reversed Plaintiff's payments and caused Plaintiff's payments to be misapplied and miscredited by not being applied during the month in which they were paid.

215. Defendant Lakeview wrongfully imposed fees based on their misapplication of Plaintiff's mortgage payments in 4 distinct instances.

216. Defendant Lakeview was not legally entitled to collect these fees as Plaintiff was current on his mortgage payments as outlined in the Mortgage Current Order.

217. Defendant Lakeview utilized unconscionable means by attempting to collect fees they were not legally entitled to.

218. When informed of its misapplication of payments and assessment of Fees, Mr. Cooper ignored the Plaintiff and continued doing the same.

219. Mr. Cooper undertook no reasonable investigation when these errors were brought to its attention other than to rubber stamp its prior conclusions.

220. Defendant Mr. Cooper sent Plaintiff a letter dated November 18, 2025, alleging Plaintiff was behind on payments and stated Plaintiff owed $5,740.82 to bring the Loan current. *See* Exhibit 20.

221. Defendant Lakeview's attorney sent Plaintiff a letter on December 15, 2025, seeking payment to bring the Loan current. *See* Exhibit 21.

222. Plaintiff suffered actual damages including but not limited to the collection of improper fees and charges imposed on the Loan due to erroneous alleged delinquency, emotional distress, and attorney's fees as a direct and proximate cause of Defendant Lakeview, M&T, and Mr. Cooper's unconscionable fee collection attempts.

223. Mr. Cooper falsely represented the character, extent, and amount of a debt against Plaintiff.

224. Under the NCDCA, "any debt collector who fails to comply with any provision of [the NCDCA] . . . is liable to such person in a private action in an amount equal to the sum of (i) any actual damage as a result of such failure; and (ii) civil penalties the court may allow" in an amount not less than $500.00 and not greater than $4,000.00. N.C. GEN. STAT. § 75-56(b).

225. As a result of Lakeview, Mr. Cooper, and M&T's actions, Defendants Lakeview, Mr. Cooper, and M&T are liable to Plaintiff for actual damages, statutory damages, costs, and attorney's fees under N.C. GEN. STAT. § 75-56(b).

226. As a result of Lakeview, Mr. Cooper, and M&T's actions, Defendants Lakeview, Mr. Cooper, and M&T are liable to Plaintiff for punitive damages under N.C. GEN. STAT. § 75-56.

## COUNT SEVEN: AGAINST FREEDOM, LAKEVIEW, M&T, AND MR. COOPER FOR BREACH OF CONTRACT

227. The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

228. Under North Carolina common law, a breach of contract exists when there is a valid contract and the defendant breached the contract. *Jackson v. Carolina Hardwood Co.*, 463 S.E.2d 571, 572 (N.C. Ct. App. 1995) ("plaintiff must demonstrate that a valid contract existed which terms were breached by the defendant").

229. A contract is "an agreement, upon sufficient consideration, to do or not to do a particular thing." *N. & W. Overall Co. v. Holmes*, 119 S.E. 817, 818 (N.C. 1923) (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES 442).

230. The Note and Deed of Trust are valid contracts between Plaintiff and Defendants.

231. Defendants were obligated to abide by the terms of the Note and Deed of Trust.

232. Paragraph 3(A) of the Note states that payments will be applied by lender as of its scheduled due date and will be applied to interest before principal.

233. Section 1 of the Deed of Trust states that payments are deemed received by Lender when they are received as set forth in the Note.

234. Section 2 of the Deed of Trust states that payments accepted by Lender will be applied to interest, principal, and escrow items.

235. A confirmed plan acts as a contract and binds the debtor and creditors. 11 U.S.C. § 1141 ("the provisions of a confirm plan bind the debtor . . . and any creditor"); First Union Commer. Corp. v. Nelson, Mullins, & Scarborough (*In re Varat Enters.*), 81 F.3d 1310, 1317 (4th Cir. 1996) ("a confirmed plan of reorganization acts like a contract").

236. The Plaintiff's Chapter 13 Plan (the "Plan") was confirmed on July 10, 2020. The Plan is attached hereto and incorporated herein as "Exhibit 22." The term "Plan" refers to Exhibit 22 and any amendments thereto.

237. The Bankruptcy Court entered an Order on August 30, 2021 amending the Plan to have payments on the Loan be paid through the Plan by the Chapter 13 Trustee. A copy of the Order is attached hereto and incorporated herein as Exhibit 23.

238. Defendants were obligated to abide by the terms of the Plan.

239. Pursuant to the terms of the Plan, the Chapter 13 Trustee (the "Trustee") disbursed the mortgage payments due under the Loan to Freedom.

240. At the end of the Bankruptcy Case, the Bankruptcy Judge entered the Mortgage Current Order holding that the Loan was paid current through April 2025 and that future payments would be credited to monthly payments.

241. From May through October 2025, Plaintiff remitted contractual mortgage payments pursuant to the terms of the Loan, which were all remitted to Freedom.

242. Plaintiff performed his obligations pursuant to the contract by tendering payment of amounts properly due and by otherwise meeting each and every obligation imposed by the parties' contract.

243. Freedom, Lakeview and Mr. Cooper failed to accept and apply payments made by Plaintiff in accordance with the terms of the Note and Deed of Trust, which caused Lakeview and Mr. Cooper to claim amounts due which were not due, assessing fees and charges improperly, and causing the Loan to be declared in default when there was no basis to do so.

244. Freedom, Lakeview and Mr. Cooper failed to accept and apply payments made by Plaintiff in accordance with the terms of the Mortgage Current Order.

245. Defendants have each breached the contract and this breach is one of bad faith as demonstrated by the allegations, *supra*. Lakeview and Mr. Cooper failed to exercise reasonable diligence in the servicing of the Loan. Each Defendant owes Plaintiff a fiduciary duty to handle payments of principal, interest, and escrow properly. Each breached their duty by failing to accept and apply payments made in accordance with the terms of the Note, Deed of Trust, and Mortgage Current Order.

246. The party injured by a breach of contract is entitled to full compensation for their loss and to be placed "as near as may be in the condition which he would have occupied had the contract not been breached." *Troitino v. Goodman*, 35 S.E.2d 277, 281 (N.C. 1945).

247. As a result of its breach, Plaintiff suffered improper fees and charges on the Loan, had the Loan accelerated, faced foreclosure, and incurred attorneys' fees and costs.

248. As a result of Defendants' breach, Plaintiff suffered the loss of $8,869.75 paid to the same to stop the foreclosure proceeding, loss of the use of his funds, and attorneys' fees and costs.

249. As a result of its breach of contract, Defendants are liable to Plaintiff for the reimbursement of improper fees and charges on the Loan, the $8,869.75 paid by Plaintiff to stop the foreclosure and attorneys' fees and costs incurred by Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Determine Defendant Lakeview was in violation of 12 C.F.R. 1024.35(e) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs as to all allegations thereunder;

2. Determine Defendant Mr. Cooper was in violation of 12 C.F.R. 1024.35(e) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs as to all allegations thereunder;

3. Determine Defendant Lakeview was in violation of 12 U.S.C. § 2605(k) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs as to all allegations thereunder;

4. Determine Defendant Mr. Cooper was in violation of 12 U.S.C. § 2605(k) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs as to all allegations thereunder;

5. Determine Defendant M&T was in violation of 12 U.S.C. § 2605(k) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs as to all allegations thereunder;

6. Determine Defendant Lakeview was in violation of the FDCPA and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs associated with the preparation of the NOEs, and attorney's fees and costs incurred in filing and maintaining this action;

7. Determine Defendant Mr. Cooper was in violation of the FDCPA and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, attorney's fees and costs associated with the preparation of the NOEs, and attorney's fees and costs incurred in filing and maintaining this action;

8. Determine that Defendant Freedom's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and find it in contempt;

9. Determine that Defendant Lakeview's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and find it in contempt;

10. Determine that Defendant Mr. Cooper's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and find it in contempt;

11. Determine that Freedom's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Freedom's willful violations of the discharge injunction, including but not limited to costs and attorneys' fees;

12. Determine that Lakeview's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and allow Plaintiff to recover actual damages incurred or to be incurred as a

consequence of Lakeview's willful violations of the discharge injunction, including but not limited to costs and attorneys' fees;

13. Determine that Mr. Cooper's actions were in willful violation of 11 U.S.C. §§ 524(a)(2) and 524(i) and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Mr. Cooper's willful violations of the discharge injunction, including but not limited to costs and attorneys' fees;

14. Determine that Plaintiff is entitled to monetary sanctions against Defendant Freedom for its contempt including but not limited to costs, attorneys' fees, and civil penalties;

15. Determine that Plaintiff is entitled to monetary sanctions against Defendant Lakeview for its contempt including but not limited to costs, attorneys' fees, and civil penalties;

16. Determine that Plaintiff is entitled to monetary sanctions against Defendant Mr. Cooper for its contempt including but not limited to costs, attorneys' fees, and civil penalties;

17. Determine Defendant Mr. Cooper willfully failed to correct Plaintiff's credit report in violation of 15 U.S.C. § 1681s-2(b) and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, and attorney's fees and costs incurred in filing and maintaining this action.

18. In the alternative to ¶ 17, determine Defendant Mr. Cooper recklessly failed to correct Plaintiff's credit report in violation of 15 U.S.C. § 1681s-2(b) and allow Plaintiff to recover actual damages incurred, statutory damages, and attorney's fees and costs incurred in filing and maintaining this action.

19. Determine Defendant Lakeview violated N.C. Gen. Stat. 75-54 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

20. Determine Defendant M&T violated N.C. Gen. Stat. 75-54 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

21. Determine Defendant Mr. Cooper violated N.C. Gen. Stat. 75-54 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

22. Determine Defendant Lakeview violated N.C. Gen. Stat. 75-55 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

23. Determine Defendant M&T violated N.C. Gen. Stat. 75-55 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

24. Determine Defendant Mr. Cooper violated N.C. Gen. Stat. 75-55 and allow Plaintiff to recover actual damages incurred or to be incurred, statutory damages, punitive damages, and attorney's fees and costs incurred in filing and maintaining this action.

25. Determine Defendant Freedom breached its contract with Plaintiff and allow Plaintiff to recover actual damages incurred or to be incurred, including attorneys' fees and costs;

26. Determine Defendant Lakeview breached its contract with Plaintiff and allow Plaintiff to recover actual damages incurred or to be incurred, including attorneys' fees and costs;

27. Determine Defendant M&T breached its contract with Plaintiff and allow Plaintiff to recover actual damages incurred or to be incurred, including attorneys' fees and costs;

28. Determine Defendant Mr. Cooper breached its contract with Plaintiff and allow Plaintiff to recover actual damages incurred or to be incurred, including attorneys' fees and costs; and

29. Grant such further relief as the Court deems just and proper.

This the 2nd day of October, 2026.

*<u>/s/ Kristen S. Nardone</u>*
KRISTEN S. NARDONE
Attorney for Plaintiff
NC Bar No. 28063

OF COUNSEL:

Nardone Law, PLLC
PO Box 1394
Concord, NC 28026-1394
(704) 784-9440
kristen@nardonelawfirm.com